DECISION
Defendant disqualified one acre of Plaintiff's specially assessed designated forestland and Plaintiff appealed. Trial was held by telephone May 13, 2008. Plaintiff appeared on her own behalf. Defendant was represented by Candy Wideman (Wideman).
 I. STATEMENT OF FACTS
Plaintiff owns 17.11 acres of land that she purchased in 1993. The property was improved with a stickbuilt home at the time of purchase, and Plaintiff lived in that home for many years. Shortly after her purchase, Defendant, on February 10, 1994, approved Plaintiff's application for forestland designation and, according to Wideman's testimony, 16.11 acres were granted forestland special assessment. (Def's Ex A.)[1] The remaining one acre was specially assessed as a forestland homesite (at a rate below market value).
In October 2004, the county planning department approved Plaintiff's application for replacement of the existing dwelling with a manufactured dwelling. That department's written approval, titled "Coos County Zoning Compliance Letter," specified that the approval was for *Page 2 
"[c]learance to replace the existing dwelling with a manufactured dwelling [,]" and further provided that "[o]nly one dwelling [is] allowed." (Def's Ex B, at 2.) A handwritten notation on that approval letter, dated February 22, 2005, authorizes the addition of a carport.Id.
Plaintiff purchased a manufactured home sometime in early 2005. That home was delivered to her property in April 2005, and eventually (prior to Plaintiff's moving in) connected to the existing well and septic system. Plaintiff did not move into the new manufactured home until late December 2005, after siting and installation were completed. According to information provided by Defendant, electrical service was established at the manufactured home on September 30, 2005, some three months before Plaintiff moved into that structure.
Plaintiff continued to carry fire insurance on the old home until July 26, 2006. The old home continued to have septic, water, and electric service into 2007. Electrical service to that home was disconnected on August 23, 2007. There is no evidence as to exactly when in 2007 septic and water service were disconnected. Demolition of the old home, which was apparently being undertaken by family and friends rather than paid professionals, was slow. In fact, the home was not completely torn down at the time of trial in May 2008.
Because of the delay in completing the installation of the manufactured home, the planning department issued a second compliance letter on June 28, 2005. (Def's Ex C.) That approval, like the first, authorized replacement of the existing home with a new manufactured dwelling, and an attached carport. Id at 2. It also authorized the placement of two attached covered decks. Id.
Wideman testified that a county appraiser visited the subject property in December 2005 and noted the manufactured dwelling. That appraiser flagged the account for a "recheck" sometime in 2006, as evidenced by a note in the appraisal card for Plaintiff's property. (Def's Ex E.) In September 2006, Joe Bouska (Bouska), another county appraiser, revisited Plaintiff's *Page 3 
property and formed the opinion that the old farmhouse was still being used and that Plaintiff was living in the new manufactured dwelling. Bouska, however, did not testify. Believing that both homes were occupied, Defendant concluded that Plaintiff had two homesites and, under applicable law, the second homesite had to be valued at market value rather than as a forest-related homesite. Defendant placed a value of $49,900 on the second homesite.
On July 20, 2007, Defendant issued a letter disqualifying one acre of Plaintiff's property from forestland special assessment as a non-forest related homesite. Defendant placed a value of $49,900 on the second homesite for the 2007-08 tax year, and assessed five years of back taxes because Plaintiff did not comply with a county zoning ordinance, Article 4.8.200 (S)(4). (Def's Ex G.)
Plaintiff appealed the disqualification, contending that she did not have a second homesite because she simply moved from one house to the other, and the old house was uninhabitable at the time she moved into the new manufactured home. Accordingly, Plaintiff insists that the one acre of land valued as a second homesite should be back under forestland special assessment. Defendant disagrees, contending that Plaintiff did, in fact, have two homesites, and that its disqualification comports with applicable laws.
 II. ISSUES
1. Did Plaintiff have two homesites?
2. If Plaintiff had two homesites, and disqualification was warranted, did Defendant err in retrospectively applying the disqualification, notice of which was given in July 2007, to the 2006-07 tax year? *Page 4 
 III. ANALYSIS
A. Forestland Special Assessment Overview
ORS 321.257[2] provides for special assessment of Western Oregon forestland, defined in part as land "that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland * * *."[3] Under that program, the value of the land is specially assessed for ad valorem tax purposes, with a taxable value well below market value, and an exemption provided for the value of the growing timber, on which a tax is imposed at the time of harvest. ORS 321.262 (providing for special assessment of forestland in western Oregon); ORS 321.272 (exempting timber from ad valorem property taxation); ORS 321.312 (providing for a privilege tax on the harvest of the timber). Plaintiff has 16.11 acres of land that have been specially assessed as designated forestland since 1993.
B. Forestland Homesites — Did Plaintiff Have One or Two?
ORS 308A.253(1) provides for special assessment of a "homesite" used in conjunction with qualifying forestland operations, using the formula found in ORS 308A.256. The homesite special assessment statute provides in relevant part:
 "(1) Land under a dwelling that is used in conjunction with the activities customarily carried on in the management and operation of forestland held or used for the predominant purpose of growing and harvesting trees of a marketable species shall qualify for special assessment under ORS 308A.256."
ORS 308A.253
A "homesite" is defined by statute as "land, including all tangible improvements to the land under and adjacent to a dwelling and other structures, if any, that are customarily provided in *Page 5 
conjunction with a dwelling." ORS 308A.053(3) (emphasis added). For special assessment purposes, a "homesite" is considered to be one acre. ORS 308A.256(4) (providing that "[f]or the purposes of establishing a homesite value, the value of one acre of land for each homesite * * * shall be used"). Finally, a "dwelling" is defined in the dictionary as "a building or construction used for residence." Webster's Third NewInt'l Dictionary 706 (unabridged ed 2002).
Defendant argues that when Plaintiff added the manufactured home she had two homes, and therefore two homesites, because the old farmhouse was still being used as a residence, or at least was not decommissioned and was therefore available for residential purposes. Moreover, because Oregon law requires a minimum of 10 acres for a qualifying forestland homesite, the land under the second home (the old farmhouse) must be valued at market value. ORS 308A.250(2) (defining a forestland as "forestland that is a parcel of land of more than 10 acres") (emphasis added); OAR 150-308A.250(2) (providing that "[a] forest homesite qualified under ORS 308A.253(1) must be located on a parcel of land with greater than 10 acres of specially assessed forestland."). Plaintiff argues that the new house replaced the old one and that the old farmhouse was uninhabitable — effectively used as storage and a woodshed. In support of that argument, Plaintiff contends that the hot water tank ceased working in the farmhouse before she moved out in 2005 and that, as a result, you could not take a shower in that house. Additionally, because she had removed the stove and refrigerator from the farmhouse to put them in the new manufactured home, you could no longer cook in the old farmhouse. Those two factors, Plaintiff insists, rendered the old farmhouse uninhabitable.
The court finds that the facts support Defendant's position. Even though Plaintiff was no longer living in the old farmhouse after December 2005, that structure was served by water, septic, and electricity well into 2007. The home had a working toilet. As such, the old farmhouse could *Page 6 
be used as a dwelling. If the home was no longer needed for residential purposes, there was no need to keep those services connected. Moreover, Plaintiff continued to carry insurance on the old farmhouse until July 26, 2006, roughly eight months after she had moved out of that home.
Contrary to Plaintiff's assertions, the removal of the stove, refrigerator, and items of personal property, do not render a dwelling an uninhabitable structure. In fact, many homeowners remove those items when selling their home, and the buyer purchases replacement items, or moves the stove and refrigerator from his or her previous home into the new one. The same is true of an inoperable hot water tank. That is an item easily replaced without substantial cost.
Based on the above, the court concludes that Plaintiff had two homes and, therefore, two homesites on January 1, 2007. Defendant correctly removed the forestland special assessment on the one acre constituting the additional homesite, and placed that property on the rolls at market value.
C. The Appropriate Year for Disqualification
Defendant issued its disqualification notice on July 20, 2007. That notice removed one acre of Plaintiff's property from forestland special assessment, for the reasons set forth above. However, Defendant made the disqualification effective as of January 1, 2006 (2006-07 tax year), some 19 months after the disqualification notice was issued, and included a five year rollback tax.
Defendant's disqualification notice indicates that "[t]he land has been disqualified from special assessment under Designated Forestland ORS 321.359(1)(b)(C), Western Oregon." That statute authorizes the assessor to remove the forestland designation upon discovery that the land is no longer forestland. As explained above, disqualification was appropriate. However, the effective date for the disqualification was contrary to applicable law. *Page 7 
ORS 321.366(1) governs the process for removal of forestland designation. That statute provides that removal "shall occur as of the January 1 assessment date for the tax year in which the county assessor discovers that the land is no longer forestland." The assessor made its discovery in September 2006. Subsection (2) of ORS 321.366 requires that notice of disqualification be mailed by the assessor "prior to August 15 of the tax year for which the removal of the land is asserted." Defendant's September 2006 discovery date precluded timely issuance of notice of disqualification in 2006. However, by waiting until July 2007, the effective date of the disqualification should have been January 1, 2007 (the 2007-08 tax year). And, the five year rollback tax provided in ORS 308A.703(3)(c) should have encompassed the five tax years 2003-04 through 2007-08. Defendant shall therefore recalculate the additional tax as provided in ORS 308A.703(2), as "the difference between the taxes assessed against the land and the taxes that would otherwise have been assessed against the land, for each of the number of years" set forth above.
 III. CONCLUSION
As explained above, the court concludes that Plaintiff had two homes, and two homesites, on January 1, 2007, and that Defendant correctly removed the forestland special assessment on the one acre constituting the additional homesite, and placed that property on the rolls at market value. Accordingly, Plaintiff's request for a restoration of forestland special assessment on the disputed one acre is denied. The court further concludes that Defendant erred in retroactively applying the five year rollback tax to the 2006-07 tax year, and that the year of disqualification should, in fact, have been tax year 2007-08, with additional taxes imposed back to tax year 2003-04 (for a total of five years). Now, therefore, *Page 8 
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied regarding the request for restoration of forestland special assessment designation, but that the calculation of the rollback tax shall be done in accordance with the court's decision above.
Dated this ___ day of October 2008.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on October 17,2008. The Court filed and entered this document on October 17,2008.
[1] It appears that the original request for special assessment sought such favorable tax treatment for 17 acres, but that number was crossed out and replaced with the number 16 (acres). Wideman implied at trial that technically only 16 acres should have been approved for forestland special assessment, but, in fact, 16.11 acres (all but the one acre homesite) received special assessment.
[2] All references to the Oregon Revised Statutes (ORS) are to 2005.
[3] Forestland under ORS 321.257 also includes "land in western Oregon, the highest and best use of which is the growing and harvesting of such [marketable species] trees." *Page 1